**INGA L. PARSONS**
**CHRISTIAN URBANO***
(of Counsel)
Attorneys at Law
3 Bessom St. No. 234
Marblehead, MA  01945

Admitted to MA* NY WY
Federal Courts
U.S. Supreme Court

Tel: 781-581-2262
Fax: 888-406-9538
Cell: 781-910-1523

Inga@IngaParsonsLaw.com                    Christian@IngaParsonsLaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/9/2021

September 9, 2021 – BY ECF

Hon. Gregory H. Woods
United States District Judge
Southern District of New York
40 Centre Street
New York, NY  10007

**MEMORANDUM ENDORSED**

    Re: *United States v. John Depeyster* 19 cr 253 (GHW)

Dear Judge Woods:

I am appointed counsel for Mr. Depeyster.  I write this letter to respectfully request that Mr. Depeyster's home detention be eliminated, converted to home confinement or otherwise modified to allow him to work, take care of his mother, to obtain medical treatment, to register in person as required and obtain essentials under probation supervision.

Mr. Depeyster needs immediate permission to be able to report in person to register his current address.  In New York, sex offenders are required to notify DCJS in writing no later than ten calendar days after any change of address, internet accounts with internet access providers, internet identifiers, or status of enrollment, attendance, employment or residence at any institution of higher education.[1] SORNA requires that when a registered sex offender resides in a jurisdiction, the sex offender must immediately *appear in-person* to update his or her name, residence, employment, school attendance, and termination of residence.[2]  Counsel has been in phone contact with the registration officer Detective Thomas Gernon advising that we are in the process of seeking permission for Mr. Depeyster to come to his office in person as there is a 10 day time period.

Mr. Depeyster sought compassionate release in May 5, 2021 and his request was not answered.  Counsel has been trying to seek relief of the medical and prison issue through the facility including contacting the Warden as to Mr. Depeyster's need for medical treatment and advising the prison of improper touching by a prison guard.  She also sought Mr. Depeyster's medical and prison records through a request and release to file a Compassionate Release, then contacting the prosecutor and thereafter the submission of a Touhy letter and release and subpoena.  To this

---

[1] https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/new-york-hny.pdf.
[2] *Id*.

date, Counsel has not received the records from the facility. When counsel would ask for medical attention she heard nothing for nearly a month. She sent another request and was told it was being forwarded to the Health Services Department for Review. A copy of an email sent on April 12th and May 3rd is attached for the Court's review.

Tellingly, Mr. Depeyster was given certain records at the time he was released – not before when he and counsel each requested them and they did not include his complaint. Counsel believes it was due to the nature of the violations including malicious and improper groping of Mr. Depeyster which counsel complained to the Warden on Mr. Depeyster's behalf. Mr. Depeyster had also made a formal complaint.

Mr. Depeyster time at the MCC was so horrific that it should make up for the need for home detention and permit him to be solely on supervised release. In the alternative, we request the a modification of his home detention to permit work, taking care of his mother, in person registration and obtaining essentials with probation approval.

Mr. Depeyster was housed the entire time at the MCC. It seemed like each day Mr. Depeyster was there a new indignity and deprivation occurred. He had great difficulty getting medical attention and had a constant fear of contracting COVID and/or the Delta variant given the shameful lack of care and amenities at the MCC. As reported, "Conditions at a high-security federal jail in Lower Manhattan have deteriorated so much that federal officials said on Thursday that they planned to close the facility, at least temporarily."[3] The decision comes just weeks after the deputy attorney general, Lisa O. Monaco, visited the jail in order to get a firsthand look at its operations, "given ongoing concerns," as the Justice Department said at the time.[4]

The Metropolitan Correctional Center, has long been criticized by inmates, lawyers and even judges for the conditions in which prisoners have been held. Its current population is 233, according to prisons officials. Most of the people held there are being detained while awaiting a trial.[5] A Justice Department spokeswoman said in a statement on Thursday that the department was "committed to ensuring that every facility in the federal prison system is not only safe and secure, but also provides people in custody with the resources and programs they need to make a successful return to society after they have served their time."[6]

As part of that effort, the statement said, the federal Bureau of Prisons had "assessed steps necessary to improve conditions" at the M.C.C., and in an effort to address them "as quickly and efficiently as possible," the department had decided to close the jail, "at least temporarily, until those issues have been resolved."[7]

David E. Patton, the attorney in chief at Federal Defenders of New York, said that addressing the jail's many problems was overdue. "The M.C.C. has been a longstanding disgrace," Mr. Patton said. "It's cramped, dark and unsanitary. The building is falling apart. Chronic shortages of

---

[3] https://www.nytimes.com/2021/08/26/nyregion/MCC-epstein-jail-closed.html
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

medical staff mean that people suffer for long periods of time when they have urgent medical issues." [8] Judge Laura Taylor Swain, the chief judge of Federal District Court in Manhattan, also said in a statement that attention to the M.C.C.'s physical conditions was long overdue..[9]

Tyrone Covington, the president of the local union that represents employees at the Metropolitan Correctional Center, said on Thursday that the union had not been told of the decision in advance. [10] "We have called for a long time to have the facility fixed and upgraded for everyone to be safe, staff and inmates alike," Mr. Covington said, adding that the jail's workers were caring and hardworking people, "who do the best that they can, every single day, with what they have." [11]

In April (the month Mr. Depeyster reported to jail), former Chief Judge Colleen McMahon said during the sentencing of a defendant that "the single thing in the five years that I was chief judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at the M.C.C., especially at the M.C.C.," she said, as well as the M.D.C."There is no excuse for the conditions in those two institutions," she said, adding that they "are run by morons." [12]

Mr. Depeyster reports that there were 26 inmates crammed into a 20 by 20 cell. They were forced to share one shower and one toilet during COVID. It is a miracle he did not contract it. When he first got to the MCC the policy was 30 minutes out 3 days per week. When he was released in September they were kept in the cell 20 to 21 hours per day. The MCC was described as "less hospitable than Guantánamo Bay" by one inmate who had been incarcerated at both.[13] It took Mr. Depeyster three months just to have email like the rest of the inmates and required intervention with the Warden.

Nelson Mandela advised "It is said that no one truly knows a nation until one has been inside its jails. A nation should not be judged by how it treats its highest citizens, but its lowest ones."[14] Local district courts have found that COVID-19 concerns warrant sentence reduction given the impact on conditions of confinement—apart from COVID risks. *See e.g., United States v. Carillo-Berber*, 18 Cr 703 (Crotty, J.) (court considered conditions of confinement in departing downward [Dkt. No. 28]); *United States v. Rivera*, 16 Cr 66 (Torres, J.)("… three months during COVID is different from three months in normal times…"); *United States v. Pierson*, 14 Cr 855 (Swain, J.)(court considered conditions of confinement at MDC during pandemic as one of the reasons for imposed Time Served); *United States v. Morgan*, 19 Cr 209 (Berman, J.)(Court imposed sentence less than one-half of the low end of the guidelines, based in part on conditions at MDC during pandemic); *United States v. Cirino*, 19 Cr 323(Rakoff, J.)("[I]t is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. *In effect, you are serving harder time every day*

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] https://www.nytimes.com/2017/01/23/nyregion/el-chapo-guzman-manhattan-jail.html?action=click&module=RelatedLinks&pgtype=Articl
[14] https://www.un.org/en/events/mandeladay/mandela_rules.shtml

*you are in the federal prisons.*"); *United States v. Brooks*, No. 11-CR-206 (LTS), Docket Entry No. 48 (S.D.N.Y. Nov. 24, 2020) (restrictions imposed in response to the COVID-19 pandemic have increased the severity of custodial punishment) and others, including, *United States v. Aracena De Jesus*, 20 Cr 19 (Engelmayer, J.), in which the district court said:

> "Finally, I am mindful… that you have served most of your time in prison so far during the worst pandemic in this country during the past 100 years. I'm mindful that you may have contracted COVID-19 while in prison. I'm mindful that your experience in prison as a result of the pandemic, the preceding lockdown, the ensuing lockdown, and your own illness was frightful. Prison is supposed to be punishment, but it is not supposed to be trauma of that nature or close." (Sent. Tr. at 36:10-18)
>
> "Bottom line, your time in the MCC was way harder than anyone intended when you were detained following your arrest. Any mature system of justice, any thoughtful judge in imposing the reasonable sentence here would have to recognize the unexpected and regrettable ardors that you experienced since your arrest in December." (Sent. Tr. at 37: 6-11).

*See also, United States v. Williams*, 2021 WL 1091905 (EDNY March 22, 2021) (recognizing a previous variance due to confinement in harsh conditions as the Metropolitan Detention Center); *United States v. Hatcher*, 2021 Wl 1535310 (SDNY Failla, J. April 19, 2021) (release on renewed motion for condition in Metropolitan Correctional Center in addition to treatment concerns). In *Hatcher*, the defendant was released on home detention and permitted to obtain medical treatment and obtain essentials with prior probation approval.

Mr. Depeyster's stay at the MCC was especially difficult because one of the officers singled him out for improper touching and groping under the auspices of routine searches. Mr. Depeyster had issues with a particular officer "K Brady". He made several verbal complaints about this officer's improper touching -- both to the officer directly and to other staff members. Officer Brady thereafter made threats. On one occasion Mr. Depeyster was leaving the unit to go to his assigned work detail. He purposely tried to avoid having contact with Officer Brady because he previously made Mr. Depeyster feel uncomfortable during a pat frisk. Since there were two officers who were conducting the search he attempted to go to the other office. Officer Brady told him he was going to search him. While conducting the search he touched Mr.Depeyster's genitals and asked his why he has his pants the way he did. Mr. Depeyster responded that he did not want the officer to keep touching his genitals every time he searches him. The officer's response was that he would continue to do so and if Mr. Depeyster didn't like it that he should write a BP8 on it. After returning from his work assignment Mr. Depeyster tried to avoid contact with this officer. When the officer noticed it he said in substance to Mr. Depeyster "you want to play games, I can play games too, I just do it better."

Counsel intervened and wrote the Warden. The Attorney Advisor for MCC New York responded:

> Per the DOJ Federal Bureau of Prisons policies and procedures, staff may conduct a pat search of an inmate on a routine or random basis where there is reasonable belief that contraband may be concealed or a good

opportunity for concealment has occurred. Therefore, and upon investigating, Officer Brady's actions were taken as part of his official duties as a correctional officer and consistent with Bureau of Prisons' regulations and policy.

Counsel asked the Attorney Advisor to provide the reasonable belief to justify the intrusion in the case but received no answer which was nearly thirty days ago. Counsel believes Mr. Depeyster was singled out due to the charge of non-reporting. He was incredibly upset and his time at the MCC went beyond even the ordinary deplorable conditions other inmates underwent from the threat of COVID, the lockdowns and quarantines, the cramped conditions and lack of amenities and delayed medical treatment.

In addition to the conditions of confinement, Mr. Depeyster's mother is especially needy to have her son assist due to her medical conditions. She wrote a letter to counsel describing how necessary he is to her well-being which is set forth below (taken directly from her email):

> TO Whom This Concern.
>
> John Depeyster is my son. Since Covid my Son has been my backbone. I been having Really hard time since He Been away. I'm Disable and, and my conditions getting worse. Have the time can't walk or move. My Son Would pick me up from emergency room. For go shopping and pickup supplies. When was to much. For my HHA I only have help 4 hours A day. I'm here alone Most The Time after 1pm. Some nights in so much pain. I go to Sleep with out eating. My son Would bring food when I couldn't cook. I have osteoporosis in my spine I have sciatica and my left and my right hip with causes the pain that stops me from moving right now and I'm going to the doctor taking test because I still don't know what's causing all the pain that I'm in it's like in my lower back in my rectum it feels like it's falling out and when I try to walk is like sharp pain in my left hip they just test my kidney they said it wasn't my kidney I'm going on the 21st to take an MRI of my lower spine I got to wait all the way till August to get a colonoscopy to find. Been Suffering Really Don't know fall story on my health. But I really need my son. I wasn't ``Daughter help Sophia Snead but she live in Florida. By baby Theresa In DV shelter with 8 month and 2 years old. She really can't Help Brian George Crystal Don't really have time To. Mom sick can't even go visit. My son Would take me. My depression getting Worse. Not only from the Pain. But my son being in there. I watch him become Better Person Better Father. And Better Son. He was last one I expected to be there for me. But when Covid Hit. He was only One That Was. Spending Time With His Children Not Only Do I Need Him. His Children Do.
>
> Thank U
>
> Theresa Henry

The need to take care of a family member is one of the factors Courts have considered in considering compassionate release motions. *See, e.g., , United States v. Wooten*, No. 3:13-CR-18 (SRU), 2020 WL 6119321, at *7 (D. Conn. Oct. 16, 2020) (need to care for an immediate family

member who has been incapacitated); U.S.S.G. 1B1.13 cmt. n.1(C)(ii), (need to care for a child upon the death or incapacitation of the child's caretaker may constitute extraordinary and compelling reasons). This is especially so as it appears that Mr. Depeyster is the only viable person to help with his mother as explained by Mrs. Henry. *Compare United States v. Heaphy*, No. 17-CR-168 (JAM), 2020 WL 5633285, at *4 (D. Conn. Sept. 21, 2020) (finding that although the caretaker of the defendant's children had to balance work, childcare, and schooling during the pandemic, the caretaker was not incapacitated, and therefore no extraordinary and compelling reason for sentence reduction existed); *United States v. Yoda*, No. 15-CR-95 (AJN), 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (finding that because defendant had not alleged that he was the only other possible caretaker of his ailing father, and had several siblings who may have been able to help with caretaking duties, release was not warranted).

For the foregoing reasons, it is respectfully requested that Mr. Depeyster's home detention be terminated, and that he be placed on regular supervised release, or, alternatively, converted to home confinement or otherwise modified to permit him to work, take care of his mother, obtain medical treatment, register in person as required and obtain essentials under probation supervision.

The government, by AUSA Jarrod Schaeffer, has received a copy of this letter and advises as to the government's position as follows:

The Government opposes the defendant's request for early termination of the Court's special condition of supervised release, which restricts the defendant to his residence for a period of seven months following his release except for medical necessities, court appearances, and other activities approved by the Court. Among other reasons, the Government believes that the issues raised by the defendant can be more appropriately addressed by working with the U.S. Probation Office and/or specific and timely requests for Court approval. If necessary, the Government will respond more fully to the defendant's motion as directed by the Court.

Thank you for your time and consideration.

Respectfully,

/s/ Inga L. Parsons

Inga L. Parsons

Cc: AUSA Schaffer

> Application granted in part and denied in part. The legal and factual basis for the full scope of the relief requested here is unclear. The Court requests that counsel provide supplemental briefing describing the legal basis for the request, particularly to the extent that the application for a modification of the Court's sentence is based on Mr. Depeyster's past experience in the MCC, as it appears. The Court would also benefit from more factual detail regarding Mr. Depeyster's current situation that might inform the Court's evaluation of the request. This application does not include basic details such as when Mr. Depeyster was released, and where he is living--in particular, whether he is living with his mother.
>
> To the extent that this letter is a request that Mr. Depeyster be permitted to leave home detention to register under SORNA, the request is granted. Mr. Depeyster may leave home detention to register for SORNA with the appropriate official. He must travel directly to his place of registration and return directly from that place to his home. He is directed to coordinate with the probation office regarding the visit.
>
> The Clerk of Court is directed to terminate the motion pending at Dkt. No. 119.
>
> SO ORDERED.
> Dated: September 9, 2021            _____
> New York, New York                        GREGORY H. WOODS
>                                          United States District Judge

New York Office: 1790 Broadway, Suite 710, New York, NY 10019 (58th Street by Columbus Circle)